[No. 29426. Department One. January 13, 1945.]

GEORGE PENCHOS *et al., Respondents,* v. WERNER RANTA *et al., Appellants.*[1]

*Frank Harrington,* for appellants.

*Florence Mayne* and *Little, Burgunder & Smith,* for respondents.

JEFFERS, J.—The complaint in this action, filed by George Penchos and wife in the superior court for King county, contained fourteen purported causes of action. Each cause of action was based upon a claimed violation or violations

[1]Reported in 155 P. (2d) 277.

of the emergency price control act of 1942, by defendants Werner Ranta and wife. The above act will be found in 56 Stat., chapter 26, p. 23 *et seq.*, 50 U. S. C. A. App. 313, § 901 *et seq.* We are only concerned in this appeal with the first, second, and eleventh causes of action.

In view of the conclusions we have reached herein, and in view of the further fact that the allegations contained in paragraphs one and two of the first cause of action are by reference made a part of each of the other causes of action, and form the basis for the claimed violations of the above act, we will set out those paragraphs in full.

"I. That on the 31st day of January, 1942, after its passage by the Congress, the 'Emergency Price Control Act of 1942' was approved by the President under which act the Office of Price Administration was set up and an administrator was thereupon appointed by the President in compliance therewith. That pursuant to the said act, regulations were promulgated *fixing the maximum price of rents which could be collected under that law the same as the rents collected on April 1st, 1941* and making said schedule of rents effective as of June 1st, 1942.

"II. That the said emergency price control act of 1942 in subsection (e) of section 205 thereof provides that a *receipt of rent over the price existing as of April 1st, 1941 constitutes a violation of such act* and that the tenant may recover either $50.00 or treble the amount by which the monthly payment exceeded said maximum price (whichever is greater) for each payment or separate violation plus reasonable attorneys' fees and costs as determined by the court." (Italics ours.)

It is further alleged, in paragraph three of the first cause of action, that plaintiffs are tenants of apartment No. B-4 of the Delamar apartments, located at 115 Olympic place, Seattle, Washington, of which apartments the defendants are owners and managers and in complete charge and control; that on *April 1, 1942,* the rent on the apartment now occupied by the plaintiffs was thirty dollars, but the defendants herein have been demanding, exacting and receiving the sum of $32.50 on said apartment, and have exacted and received said excessive payments on three different occasions since June 1, 1942, and by reason thereof

the said plaintiffs are entitled to recover the sum of one hundred fifty dollars, plus attorney's fees and costs herein to be taxed. Plaintiffs in paragraph one of their second cause of action by reference make paragraphs one and two of the first cause of action, a part thereof.

It is alleged in paragraph two of the second cause of action, that O. J. Vadnais is tenant of apartment No. C-4 of the Delamar apartments, of which defendants are owners and managers; that, on *April 1, 1942,* the rent on the apartment occupied by Vadnais was forty-five dollars, but the defendants have been demanding and receiving the sum of fifty dollars on such apartment, and have exacted and received such excessive payments on three different occasions since June 1, 1942, and by reason thereof Vadnais is entitled to receive the sum of one hundred fifty dollars, plus attorney's fees and costs. In paragraph three it is alleged that Vadnais has transferred and assigned his claim against defendants to the plaintiff for the purpose of bringing this action and making collection thereof.

Paragraph one of the eleventh cause of action by reference makes paragraphs one and two of the first cause of action, a part thereof.

It is alleged in paragraph two of the eleventh cause of action, that Grace E. Newth is a tenant of apartment No. B-7 of the Delamar apartments, of which apartments defendants are owners and managers, and in complete control; that, on *April 1, 1942,* the rent on the apartment now occupied by Mrs. Newth was $27.50, but the defendants have been demanding and receiving the sum of thirty dollars on such apartment, and have exacted and received such excessive payment on five different occasions since June 1, 1942, and by reason thereof Mrs. Newth is entitled to recover the sum of two hundred fifty dollars, plus attorney's fees and costs. Paragraph three alleges an assignment by Mrs. Newth to plaintiffs of her claim against defendants.

In paragraph one of each of the other eleven purported causes of action contained in the complaint, paragraphs one

and two of the first cause of action are by reference made a part thereof.

In paragraph two of each of the causes of action, it is alleged that a certain person was a tenant of a certain apartment of the Delamar apartments; that, on *April 1, 1942,* the rent on such apartment was a certain amount, but that defendants have been demanding and receiving a certain sum on such apartment which is in excess of the rent on April 1, 1942, and a recovery is asked in each case in the sum of fifty dollars for each month where rent was collected after June 1, 1942, in excess of that collected on April 1, 1942. The cause came on for hearing before the court, and thereafter the court made and entered its memorandum decision as follows:

"Upon consideration of the evidence and the Emergency Price Control Act of 1942, I would find, as alleged in plaintiffs' first cause of action, that defendants violated said act on three different occasions, entitling plaintiffs, under said act, to judgment for $50 for each violation; and, as alleged in the eleventh cause of action, said defendants violated said act on five different occasions, entitling plaintiffs to recover judgment for $50 for each violation.

"I will not allow recovery by plaintiffs on their second cause of action, for in my opinion the judgment of Judge Findley determined the fair rental value of said apartment, upon which judgment the defendants had a right, under all the circumstances, to rely in fixing the amount of rent for said apartment."

The judgment referred to in the above memorandum opinion was made and entered in a case instituted by these defendants against O. J. Vadnais and wife for rent claimed to be due from Vadnais and wife for the same apartment involved in the second cause of action herein. It was alleged in the complaint in that action, that the reasonable rental for such apartment was fifty dollars per month. Judge Findley entered a judgment in favor of Werner Ranta and wife, and against Vadnais and wife for one hundred twenty-five dollars. This judgment was signed and filed October 21, 1942, and apparently covered the rent due for September and October, 1942.

The memorandum decision continues:

"In my opinion, $100 is a reasonable attorneys' fee to be allowed plaintiffs.

"It is my opinion that said act is not unconstitutional.

"Findings of fact, conclusions of law and judgment in accordance herewith may be presented for signature.

"DATED this 2nd day of February, 1944."

On February 25, 1944, the trial court made and entered its findings of fact, conclusions of law, and judgment, in the instant case.

Finding of fact II is in almost the identical language of paragraphs one, two, and three of the first cause of action, as hereinbefore set out. We quote only the last part of paragraph two of the findings:

"That under the Emergency Price Control Act of 1942, the maximum rental for the apartment occupied by the plaintiffs in the defendants' apartment house on *April 1, 1942* was $30. That the defendants demanded and received for the months of June, July and August, 1942, the sum of $32.50." (Italics ours.)

In paragraph three of the findings, the court found that, in the action before Judge Findley hereinbefore referred to, that court fixed the rent of the apartment occupied by Vadnais and wife (the same apartment here involved), at fifty dollars per month for the months of September and October, 1942. The rental for the two months mentioned having been paid under an order of court, such judgment is *res judicata,* and respondents could not collect herein for a claimed violation of the act for September and October, 1942. The court further found that the rent on this apartment on *April 1, 1942,* was forty-five dollars per month, and that defendants had demanded and received of Vadnais and wife the sum of fifty dollars for August, 1942, and that plaintiffs are entitled to recover from defendants on the second cause of action for one violation only, in the sum of fifty dollars.

In paragraph four, the court found that Grace E. Newth was a tenant of the apartment house, occupying apartment B-7; that the rental on such apartment as of *April 1, 1942,*

was $27.50, but that defendants demanded and received the sum of thirty dollars during the months of August, September, and October, 1942, which constitutes three separate violations of the act.

In paragraph five the court found that plaintiffs had failed to sustain the allegations of their complaint as to the third, fourth, fifth, seventh, eighth, ninth, tenth, twelfth, thirteenth, and fourteenth causes of action, and that all of them should be dismissed; that plaintiffs took a voluntary nonsuit as to their sixth cause of action.

In paragraph six, the court found that the sum of three hundred dollars was a reasonable amount to be allowed plaintiffs' attorneys.

The court concluded that plaintiffs were entitled to recover judgment against defendants on their first cause of action in the sum of one hundred fifty dollars, on the second cause of action in the sum of fifty dollars, and on the eleventh cause of action in the sum of one hundred fifty dollars, and for three hundred dollars attorney's fees and for costs. Judgment in accordance with the conclusions was entered on February 25, 1944.

Motion for new trial was filed by defendants on February 28, 1944. This motion was denied by order entered March 28, 1944. Notice of appeal from the judgment was served on attorneys for plaintiff on May 8, 1944, and filed the same day. On May 8th, the court fixed the amount of the cost and supersedeas bond on appeal in the sum of one thousand dollars, which amount was deposited with the clerk on the same day. No statement of facts has been filed in this cause showing what testimony or exhibits were introduced, or motions made during the trial. However, there was filed with the clerk of the superior court on July 14, 1944, what purports to be a statement of facts. All that is included in this statement is what took place on April 28, 1944, on the argument of appellants' motion for new trial. The statement also contains the memorandum decision of Judge Hall heretofore referred to.

By the certificate, the trial court made the exhibits in the cause a part of the records. We have examined these

exhibits, but it can be understood that they are of little, if any, value to us, as the record does not show the purpose for which the exhibits were introduced, nor is there any explanation of such exhibits, other than appellants' exhibit 14, which is the superior court record in the case of Ranta and wife against Vadnais and wife, to which reference has been made.

We have set out the record before us as it appeared on August 25, 1944, when appellants served their opening brief, and on August 26, 1944, when appellants' briefs were filed in this court. Appellants make some eight assignments of error. In view of the conclusions we have reached in this case, we will only consider the first assignment, which states: "The court erred in that the findings of fact do not support the conclusions of law and judgment."

In view of the condition of this record, it must be assumed that the evidence supports the findings of fact as made by the trial court. The question then presented is: Do the findings of fact support the conclusions of law and judgment?

It will be noticed that in paragraph one of the first cause of action, which paragraph is by reference made a part of every one of the fourteen purported causes of action, it is alleged: "That pursuant to the said act, regulations were promulgated fixing the maximum price of rents which could be collected under that law the same as the rents collected on *April 1st, 1941.*" (Italics ours.)

In other words, before one would be liable for a violation of the act, it must appear that the landlord collected rent subsequent to June 1, 1942, in excess of the rent collected on April 1, 1941. Nowhere in any of the fourteen causes of action, is it alleged what rent was collected by appellants on any of the apartments here involved, on April 1, 1941. In each cause of action, it is alleged that on *April 1, 1942,* the rent on the particular apartment was a certain sum, and it is then alleged that for certain months subsequent to June 1, 1942, appellants collected rent on such apartments in excess of that collected on *April 1, 1942.*

The findings of fact follow the allegations of the complaint and contain no finding of the rent collected on April 1, 1941, on any of these apartments.

█ It does not appear in the record hereinbefore referred to, that the complaint was amended. It is apparent that neither the complaint nor the facts as found by the trial court, show any violation of the emergency price control act. Both the complaint and the findings base the claimed violations of the act upon the collection of rent by appellants in excess of that collected on *April 1, 1942.* We are clearly of the opinion that the findings of fact as made and entered on February 25, 1944, do not support the conclusions of law and judgment entered on that date. It was from this judgment the appeal was taken, and it was this judgment that was superseded.

On the record, then, as made, the judgment of the trial court must be reversed, and the cause remanded with instructions to dismiss the three causes of action here involved, unless the trial court had jurisdiction to make a part of the record on this appeal, a certain *nunc pro tunc* order made and filed on September 19, 1944, and brought to this court by a supplemental transcript filed in this court on October 4, 1944. It is apparent that this *nunc pro tunc* order was made and filed long after the appeal to this court had been perfected.

It is recited in this order that the findings erroneously make reference to the maximum rentals as those existing on April 1, 1942, whereas the proof established such date as April 1, 1941, and a similar error appearing in the complaint was, without objection, amended during the trial so as to conform to the proof; and that the error in the date was not called to the attention of the court at any time.

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the FINDINGS OF FACT herein be and the same are hereby corrected so as to substitute 'April 1st, 1941' as and for 'April 1st, 1942' in line 7 of finding II on page 2 of said findings of fact and in line 7 of finding III on page 2 thereof.

"This order is entered *nunc pro tunc* and shall be and is effective as of February 25th, 1944, the date on which the original findings of fact were made and entered herein."

By the *nunc pro tunc* order, the trial court attempted to change the date *April 1, 1942,* to *April 1, 1941,* in the following findings of fact relative to the first cause of action: "That under the Emergency Price Control Act of 1942, the maximum rental for the apartment occupied by the plaintiffs in the defendants' apartment house on *April 1st, 1942* was $30.00," and to change the date April 1, 1942, to April 1, 1941, in the following findings of fact relative to the second cause of action: "That the rent of this apartment on April 1, 1942 was $45.00 per month." No attempt was made by the order to change the findings relative to the eleventh cause of action, which reads: "That the rental on said apartment as of April 1st, 1942, was $27.50 per month."

Respondents contend that a trial court may at any time, before or after judgment, correct clerical errors in its own record so as to make it speak the truth, citing *O'Bryan v. American Inv. & Imp. Co.,* 50 Wash. 371, 97 Pac. 241; *Pappas v. Taylor,* 138 Wash. 31, 244 Pac. 393; and *Gordon v. Hultin,* 146 Wash. 61, 261 Pac. 785.

■ It may be admitted that, *so long as the trial court has jurisdiction of the cause,* it has the inherent power to modify its judgment to make it conform to the judgment actually entered. That is what was decided in *O'Bryan v. American Inv. & Imp. Co., supra.* It does not appear, however, from the opinion in the cited case, that, at the time the petition to modify the judgment was made, an appeal had been perfected to this court from such judgment. In *Pappas v. Taylor, supra,* we stated:

"It is urged on this appeal that, after the trial court had made and entered its decree in the original cause, it had no right or jurisdiction to enter a supplemental decree. The supplemental decree in no way departs from the original decree, but contains additional provisions for the method of enforcing the decree against the parties herein. In so far as the liabilities of the parties thereto are concerned, the supplemental decree was the same as the decree entered six days previously. *No appeal has been taken by the principal defendant from either the original or the supplemental decree.*

"The superior court has the inherent power, independent of statute, to so modify its judgment entry as to make it

conform to the judgment actually entered at any time, when to do so will not affect the substantial rights of innocent third persons, who have acted on the faith of the entry, *or the original decree has not been superseded."* (Italics ours.)

We do not find anything in *Gordon v. Hultin, supra,* which sustains the broad contention made by respondents. The cited cases do not cover the situation here presented.

Rem. Rev. Stat., § 1731 [P. C. § 7316], provides:

"Upon the taking of an appeal by notice as provided in this title, and the filing of a bond to render the appeal effectual, the supreme court shall acquire jurisdiction of the appeal for all necessary purposes, and shall have control of the superior court and of all inferior officers in all matters pertaining thereto, . . . But the superior court shall, nevertheless, retain jurisdiction for the purpose of all proceedings by this act provided to be had in such court, and for the purpose of settlement and certifying the bills of exceptions and statements of facts, and for all purposes in so far as the cause is not affected by the appeal."

In the early case of *Aetna Ins. Co. v. Thompson,* 34 Wash. 610, 76 Pac. 105, we stated: "It is the universal doctrine that an appeal deprives the lower court of jurisdiction, and lodges it exclusively in the appellate court."

In the cited case, we quoted from 2 Spelling, New Trial & Practice, § 559:

" 'The perfecting of an appeal has the effect to deprive the lower court of jurisdiction *to do anything* not pertaining to the enforcement of the judgment or order which would tend to render the appeal abortive or defeat its purpose.' " (Italics ours.)

In the cited case, we also quoted from *Shay v. The Chicago Clock Co.,* 111 Cal. 549, 44 Pac. 237, as follows:

" 'A motion was made, upon suggesting a diminution of the record, to file as a part of the record on the appeal a document purporting to be a judgment entered in the cause September 27, 1895, *nunc pro tunc* as of June 5, 1895, but as the appeal from the original judgment was made June 19th, the judgment was thereby removed from the superior court, and, while an appeal from a judgment is pend-

ing, *that court has no power to amend or correct its judgment.'* " (Italics ours.)

The opinion in the cited case also quotes from *Clarke v. Manchester,* 56 N. H. 502:

" ' . . . it has been held, that, after an appeal from the state circuit court has been taken and allowed, the court ceases to have any jurisdiction in the cause, *and thereafter the record cannot be changed* by either party; nor can an entry be filed *nunc pro tunc.*' "

Again in *Kawabe v. Continental Life Ins. Co.,* 97 Wash. 257, 166 Pac. 617, we stated:

"It is the settled rule in this state that an appeal lodges jurisdiction of the action exclusively in the appellate court, *and that the lower court has no jurisdiction other than to do those things necessary or specially provided by statute for making the appeal effective.*" (Italics ours.)

citing among others the case of *Aetna Ins. Co. v. Thompson, supra.*

We also stated in the *Kawabe* case: "It is the rule also that this court, being a court of appellate jurisdiction, must determine the cause upon the record as made."

In the case of *Isom v. Olympia Oil & Wood Products Co.,* 200 Wash. 642, 94 P. (2d) 482, an attempt was made after an appeal had been perfected to have a *nunc pro tunc* order entered. In holding the trial court had no authority to make such an order, we stated:

"The order of the trial court was of no force or effect. Trial courts have no jurisdiction other than to do those things necessary or specifically provided by statute for making the appeal effective." (Citing *Kawabe v. Continental Life Ins. Co., supra,* and *Van Horne v. Van Horne,* 194 Wash. 606, 78 P. (2d) 1082.)

In *State ex rel. Department of Public Service v. Wilson,* 12 Wn. (2d) 614, 123 P. (2d) 341, after citing all the cases hereinbefore mentioned and others, we again quoted with approval the rule last herein above announced.

■ We see no escape from the conclusion that, under the authorities last cited, the trial court was without jurisdiction, after the appeal had been perfected, to change the

record by this *nunc pro tunc* order. This order certainly does not come within the category of orders necessary or specially provided by statute for making the appeal effective.

We are of the opinion the rule announced in *Isom v. Olympia Oil & Wood Products Co., supra,* and quoted above, is sound, and that any other rule would lead to confusion and a conflict of jurisdiction.

For the reasons herein assigned, the judgment of the lower court is reversed, and the cause remanded with instructions to enter a judgment dismissing with prejudice the three causes of action here involved.

MILLARD, STEINERT, and SIMPSON, JJ., concur.

GRADY, J. (dissenting)—I am unable to give my assent to the disposition made of this case by the majority opinion. The right of recovery is based upon the rentals of the properties involved as of April 1, 1941. The complaint throughout its several causes of action alleged that the emergency price control act so provided, and then alleged that, on April 1, *1942,* the rental was a certain sum for each property rented. That this latter date is a clerical error is plainly manifest because what the rentals were on a date other than April 1, 1941, was immaterial and furnished no basis for a cause of action if the rentals charged and collected exceeded those amounts.

The appellants have not brought here any statement of facts showing whether the verbal testimony, if any there was, on the subject of rentals was with reference to April 1, 1941, or April 1, 1942, but there are two exhibits certified by the trial judge in the statement of facts (exhibits 2 and 17) which show the rentals of the properties involved in two of the causes of action upon which recovery was had as of April 1, 1941.

Although appellants were the defendants and the losing parties in the trial court, their counsel prepared the findings of fact, and in such findings he carried forward the same error as to the year 1942 as appeared in the complaint. In view of the foregoing exhibits, I can indulge in no other

assumption than that he followed the wording of the complaint when he prepared the findings of fact and did not observe that the year 1942 was an error. As the findings read with the date of April 1, *1942,* they, of course, do not support the judgment as a matter of law.

When the appellants presented their motion for a new trial, they were represented by their present counsel, who stated to the court that he wished to present certain enumerated points, eight in all, the fifth being that "the findings of fact do not support the judgment." The statement of facts filed by appellants and certified by the trial judge is limited to what occurred when the motion for a new trial was presented and the memorandum decision of the court and the certificate of the trial judge as to the exhibits in the case.

It does not appear that the above-quoted question raised was argued or that the attention of the court was called to the discrepancy in dates in the complaint and findings and the exhibits. When the case reached this court on appeal, the appellants raised the same question they did in the court below, that the findings of fact did not support the judgment, and based their argument upon the claim that the record did not show what the rentals for the properties were on April 1, 1941, but only as of April 1, 1942. When the attention of counsel for respondents was called to the discrepancy in dates, they applied to the trial court for an order of correction, and one was entered September 19, 1944, *nunc pro tunc* as of February 25, 1944, the date the findings of fact were signed by the trial judge.

I agree with the majority opinion that the *nunc pro tunc* order was entered without jurisdiction, for the reason stated therein; but I believe the order gives us such reliable information that the discrepancy in dates is a clerical error that we should do whatever is necessary in order that we may hear the appeal on its merits.

Section 1737, Rem. Rev. Stat. [P. C. § 7322], provides, in part, as follows:

"Upon an appeal from a judgment or order, or from two or more orders with or without the judgment, the supreme

court may affirm, reverse or modify any such judgment or order appealed from, as to any or all of the parties, and may direct the proper judgment or order to be entered, or direct a new trial *or further proceedings to be had;* . . . " (Italics ours.)

Pursuant to this statute, we have remanded cases to the trial court for further proceedings, so that some issue could be determined that could not be decided on the appeal. *Jenkins v. Jenkins University,* 17 Wash. 160, 173 (on petition for rehearing), 49 Pac. 247, 50 Pac. 785; *McNeff v. Capistran,* 120 Wash. 498, 208 Pac. 41; *Harrison v. Consolidated Holding Co.,* 200 Wash. 434, 93 P. (2d) 729.

It was not contemplated by any of these cases that, after the trial court acted, the record should be resubmitted to us to consider further the appeal; but it seems to me that, not only by virtue of the statute and the cases just cited, but also by virtue of our inherent powers as an appellate court, we have the power to remand for the correction of an error and to direct the corrected record to be submitted to us for final action on the appeal. I think, instead of reversing the judgment and ordering the action dismissed with prejudice, we should remand, with instructions to cause the complaint and findings to be amended and corrected, and then to transmit the amended and corrected record to this court.

The appellants have raised some important questions on their appeal which should be decided by us at this time, and I believe the course I have suggested should be taken.

---

February 28, 1945. Petition for correction of record denied.