[No. 29488.   *En Banc.*   August 2, 1945.]

JOSEPHINE NASH, *Respondent,* v. THEODORE NASH,
*Appellant.*[1]

*J. Peter P. Healy,* for appellant.

*Harry H. Johnston,* for respondent.

JEFFERS, J.—On or about May 19, 1943, Josephine Nash instituted an action for divorce against her husband, Theodore Nash, in Pierce county, Washington. The defendant did not appear in that action. On June 29, 1943, the court, after hearing testimony and after making findings of fact and conclusions of law, made and entered an interlocutory decree of divorce in favor of the plaintiff, Josephine Nash. This decree awarded the care, custody, and control of the

[1] Reported in 161 P. (2d) 326.

minor son to plaintiff, with the right of visitation at all reasonable times to defendant, and defendant was ordered to pay the sum of twenty dollars per week for the support of the minor until the minor should reach the age of maturity, subject to the further order of the court. A final decree, confirming in all respects the interlocutory decree, was entered December 31, 1943.

June 15, 1944, defendant, Theodore Nash, filed a petition for modification of the above decree. It will be sufficient to say that defendant, in his petition, asked to have the award of twenty dollars per week reduced to thirty dollars per month, and that plaintiff be required to keep the minor son where he would be available to defendant at all reasonable times. Upon the filing of the above petition, a show cause order was issued requiring plaintiff to appear June 23, 1944, and show cause, if any she had, why the petition should not be granted.

The plaintiff signed and filed an affidavit, the effect of which is to deny the allegations of the petition to modify. Defendant filed an answering affidavit.

The above are the pleadings upon which the petition to modify was heard.

June 23, 1944, the court made and entered an order which, omitting the formal parts, is as follows:

"This cause coming on to be heard upon the petition of the defendant herein for an order reducing the amount of alimony provided by the decree herein, and the court *having heard testimony* and the arguments of counsel

"It is ordered that the said petition be denied.

"It is further ordered that plaintiff permit the defendant to see the child in accordance with the terms of the decree.

"Dated this June 23, 1944.

ERNEST M. CARD, Judge."

(Italics ours.)

July 5, 1944, defendant served on the attorney for plaintiff a notice of appeal from the above order, and such notice of appeal, with the acceptance of service thereon, was filed the following day. An appeal bond was filed July 11, 1944.

Appellant assigns error on the refusal of the trial court to reduce the amount of support money to be paid respondent, and on the refusal of the court to require respondent to reveal to appellant the whereabouts of the minor son.

At the outset of this case we are met with a jurisdictional question relative to the filing of the statement of facts.

The purported statement of facts which we are asked to consider herein bears the following filing marks: "Filed in County Clerk's Office, Oct. 24, 1944, Pierce County, Wash. Kathryn E. Malstrom, County Clerk, by A. D. Eder, Deputy." Immediately under the above filing mark is the following longhand entry: "Nunc pro tunc as of September 9, 1944."

No order of the court appears in the record purporting to authorize the clerk to make such a *nunc pro tunc* entry. We assume that the clerk must have thought he was authorized to make the above *nunc pro tunc* entry because of the following entry made by the trial court at the end of its certificate to the statement of facts: "Done in open court this 24th day of October, 1944." Immediately following is this longhand entry: "Nunc pro tunc as of Sept. 9, 1944. Ernest M. Card, Judge."

The certificate of which the last-two-quoted entries are a part is the usual form certificate, wherein the judge certifies that the foregoing statement of facts contains all the evidence and testimony introduced upon the trial, together with all objections and exceptions made and taken to the admission or exclusion of testimony, etc.

The above certificate does not purport to certify when, if ever, the statement was filed. Following that certificate and the quoted entries is this further certificate:

"I further certify that the original of this statement was settled by me and the certificate signed on Sept. 9, 1944, after notice in presence of atty. for appellant in open court, and that since that time said original has been lost or mislaid, and cannot be found.

ERNEST M. CARD, Judge."

The last certificate is not dated.

The above entries made by the trial court do not purport

to change the actual filing date of the statement, nor to authorize the clerk to make a *nunc pro tunc* entry changing the filing date of the statement from October 24 to September 9, 1944, had it desired to do so.

In the case of *Penchos v. Ranta,* 22 Wn. (2d) 198, 155 P. (2d) 277, decided January 13, 1945, we discussed quite fully the conditions under which the trial court was authorized to make an effective *nunc pro tunc* order. In the cited case will be found a reference to other decisions of this court bearing on the question presented.

■ Clearly, under our decisions, the trial court was without authority in this case, by a *nunc pro tunc* entry or order, to change the actual filing date of the statement to September 9, 1944.

■ It may be stated here that attached to the back of the purported statement of facts are two affidavits, one by J. Peter P. Healy and one by A. D. Elder, deputy clerk. These affidavits are not referred to or identified in the statement of facts or the certificate of the court, nor are they contained in the transcript. Not being properly before us, these affidavits cannot be considered.

■ The order appealed from having been entered on June 23, 1944, it is apparent that the statement of facts was not filed within ninety days thereafter, as provided by rule 9, Rules of Court (18 Wn. (2d) 9-a). We have repeatedly held that the filing of a statement of facts within the time prescribed by law is jurisdictional, and that we cannot consider a statement not filed within the prescribed time. *Tremblay v. Nichols,* 187 Wash. 109, 59 P. (2d) 1123.

■ The record herein shows that the order appealed from recites, among other things, that the trial court heard testimony. This being true, even though we considered appellant's petition in the nature of an affidavit, and even though it was not denied, which in fact it was by the affidavit of respondent, still, in the absence of a statement of facts setting forth the testimony, we could not determine the questions presented in this case; or in other words, we could not say that the trial court erred in refusing to modify the divorce decree. To the contrary, in the absence of a

statement of facts, it must be presumed in this case that the court was justified in refusing to modify the decree. *Falk v. Rose*, 18 Wn. (2d) 333, 336, 139 P. (2d) 634.

In view of the record before us, we have no alternative other than to affirm the order as made by the trial court, and we do therefore affirm such order.

MILLARD, STEINERT, ROBINSON, and SIMPSON, JJ., concur.

BEALS, C. J. (concurring)—In his dissent, Grady, J., refers to and quotes Rem. Rev. Stat., § 1270 [P.P.C. § 44-19], which provides, upon application, for the restoration of a lost record by the court before which the action or proceeding is pending and of whose files the lost record was a part. This is a general statute referring to all courts of this state, the power of the court to be invoked upon application by a proper party, the authority of the court being limited in time to the pendency of the action before that court.

In the case at bar, it does not appear that any application to restore a lost record was ever made, and the superior court having entered its final order in the case at bar, the action was no longer "pending" in that court. It is also true that, at the time the trial judge certified the statement of facts *nunc pro tunc* as of September 9, 1944, jurisdiction of the cause had been removed to this court by the seasonable filing of notice of appeal and bond. This court then had jurisdiction of the cause, and if it proved necessary or desirable to restore a lost record, application should have been made to this court for such restoration. This court then might have referred the matter to the superior court for hearing, and, if appropriate, to enter an appropriate order; but no such procedure was invoked.

Of course, it was the duty of the trial court to hear any application to certify a statement of facts and, if a proper one was presented, certify the same. In my opinion, the jurisdiction of the superior court was limited and did not extend so far as to authorize that court to restore a lost record.

The trial court never made any statement or finding whatsoever as to the date the proposed statement of facts had been filed with the clerk of the court, or that it ever had been so filed.

As stated in the majority opinion, the words written under the clerk's file mark, "nunc pro tunc as of September 9, 1944," amount to nothing and must be disregarded. In my opinion, there is no basis whatever for any presumption that that writing was made by the clerk with authorization or authority.

This court in *State v. Schuman,* 87 Wash. 590, 152 Pac. 3, stated that the court or judge who tried the case might, and that it was his duty to, restore a lost portion of the clerk's file pursuant to the provisions of Rem. Rev. Stat., § 1270, above referred to. The question presented was correctly decided and, in my opinion, the language of the court above referred to was inadvertently used, as at the time of the rendition of the opinion, the case was no longer "pending" before the superior court, but on the contrary was pending before this court. Of course, as stated in the opinion, the party complaining was not without remedy, but might by way of an application to this court have had the lost record duly restored. The language above referred to in the opinion cited was an erroneous statement of the law, and to that extent the case should be overruled.

For the reasons stated, I concur in the opinion of the majority.

MILLARD, J., concurs with BEALS, C. J.

MALLERY, J. (dissenting)—The respondent secured a decree of divorce from the appellant by default. The findings of fact upon which the decree was based found that the appellant was an able-bodied man, employed in the shipyards at seventy dollars per week. The decree gave the respondent custody of the minor child and allowed twenty dollars per week for his support. Appellant's petition for modification of the decree showed that, for some time prior to its filing, appellant was employed by the

United States Army Transport at a salary of about one hundred and fifteen dollars per month.

Appellant had the statement of facts certified by the court and filed it in open court on the 9th day of September, 1944. It was thereafter lost. The court certified a copy of the statement of facts with the statement as set out in the majority opinion, and the clerk filed it in open court on October 24, 1944, with file mark as shown in the majority opinion, reciting "*nunc pro tunc* as of September 9, 1944."

"A *nunc pro tunc* entry, in practice, is an entry made *now* of something which was actually previously done, to have effect as of the former date." *Perkins v. Hayward*, 132 Ind. 95, 31 N. E. 670.

This court raised the issue upon which the majority opinion rests, upon its own motion. The doctrine of *stare decisis* cannot be invoked unless the decisions relied upon are in point. None of the citations in the majority opinion are in point, and hence it is a case of first impression. *Aetna Ins. Co. v. Thompson*, 34 Wash. 610, 76 Pac. 105, held that after appeal the trial court had no jurisdiction *to change* its judgment. *Kawabe v. Continental Life Ins. Co.*, 97 Wash. 257, 166 Pac. 617, held that the trial court had no jurisdiction *to grant a new trial* during the pendency of an appeal. *O'Bryan v. American Inv. & Imp. Co.*, 50 Wash. 371, 97 Pac. 241, and *Pappas v. Taylor*, 138 Wash. 31, 244 Pac. 393, held that the superior court had inherent powers to modify its judgment entry so as to make it conform to the judgment actually entered at any time where the original decree has not been superseded by an appeal. *Van Horne v. Van Horne*, 194 Wash. 606, 78 P. (2d) 1082, held that, during the pendency of an appeal, the trial court had no jurisdiction *to vacate or modify the judgment*. *Isom v. Olympia Oil & Wood Products Co.*, 200 Wash. 642, 94 P. (2d) 482, held that, where the notice of appeal was not filed within thirty days, the trial court had no authority *to change the date of the actual filing* in order to bring it within the time. *State ex rel. Department of Public Service v. Wilson*, 12 Wn. (2d) 614, 123 P. (2d) 341, held that

during the pendency of an appeal the trial court had no jurisdiction *to strike the statement of facts. Penchos v. Ranta*, 22 Wn. (2d) 198, 155 P. (2d) 277, held that, during the pendency of an appeal, the trial court had no jurisdiction *to correct its findings of fact* made prior to judgment and appeal.

The issue in this case is: Can the actual and true date of filing a statement of facts be established by a *nunc pro tunc* entry when one of those rare misadventures due to the fallibility of human nature occurs? *Isom v. Olympia Oil & Wood Products Co., supra,* is not in point because there the court attempted to fix a date of filing other than the true date.

This being a case of first instance, we should follow the statute, which is Rem. Rev. Stat., § 1731 [P.P.C. § 5-55], reading as follows:

"Upon the taking of an appeal by notice as provided in this title, and the filing of a bond to render the appeal effectual, the supreme court shall acquire jurisdiction of the appeal for all necessary purposes, and shall have control of the superior court and of all inferior officers in all matters pertaining thereto, and may enforce such control by a mandate or otherwise, and, if necessary, by fine and imprisonment, which imprisonment may be continued until obedience shall be rendered to the mandate of the supreme court. But the superior court shall, nevertheless, retain jurisdiction for the purpose of all proceedings by this act provided to be had in such court, and for the purpose of settlement and certifying the bills of exceptions and statements of facts, and *for all purposes in so far as the cause is not affected by the appeal.*" (Italics mine.)

It is clear that, even after notice of appeal, the superior court retains jurisdiction over those things pertaining to the perfection of the appeal "and for all purposes in so far as the cause is not affected by the appeal."

It seems to me that the matter of keeping the records of the superior courts is of necessity exclusively within the jurisdiction of those courts. They have always been presumed to be correct unless and until their correctness is challenged. The jurisdiction of the superior courts to act upon such matters is not affected in the least by the exist-

ence of the right to take an appeal from their acts for the purpose of challenging their correctness. The appeals in the cases cited by the majority opinion were taken for that purpose. However, they only hold that the superior court may not *alter* the judgment or the record upon which it is based, or take a different action than that inhering in the final order or judgment so as to affect the results of the appeal, or, as in the *Isom* case, that it may not restore the jurisdiction for an appeal when in fact it had been lost by the lapse of the jurisdictional time.

This is a case, however, where the record shows that the jurisdictional steps for taking an appeal, were taken timely. Had the court arbitrarily refused to file the statement of facts instead of merely having lost it, I think the appellant could have come into this court, not to have this court assume jurisdiction and file it itself, but to require the superior court to do so, in which case a *nunc pro tunc* entry to take effect as of the time the statement of facts was offered for filing would have been proper.

Had the appellant moved the court for an order to make the record speak the truth and had the court denied it on the ground that it had no jurisdiction so to do, appellant could then have appealed to this court, not to have jurisdiction conferred upon the superior court to so act, but to require the superior court to exercise its existing and original jurisdiction conferred by the statute. Since the superior court did not refuse to act, there was no occasion for the appellant to appeal to this court.

If it be urged that the superior court had no jurisdiction to act unless authorized to do so by this court, the answer is that, if it had no jurisdiction under our constitution and laws, then this court could not perform the legislative function of conferring jurisdiction upon it, and regardless of what we might do, it would still not have it. Certainly, this court would not, itself, file the statement of facts for the appellant, nor hold a hearing to take testimony for the purpose of deciding the issue of fact here involved. (This court refused to examine the affidavits in this case.)

Had the appellant come directly into this court in the first instance, seeking a remedy for the inadvertence of the clerk of the court, instead of proceeding as he did, he would have been confronted at once with the proposition that, as an appellate court, we have no jurisdiction to perform the necessary act ourselves. Nor would we entertain the petition or give directions to the superior court, since it had not refused to act and still had the jurisdiction and the duty to keep its own records and make them speak the truth. To hold otherwise would be an unlawful encroachment upon the jurisdiction of the superior court.

Had the respondent thought the court committed error in its determination of facts with regard to the filing, she had the right to challenge the factual correctness of the record by appeal. She did not do so. The majority opinion does not pass upon the factual question of the correctness of the record; it simply denies the superior court's jurisdiction to make a correct record as to the date of filing the statement of facts by a *nunc pro tunc* entry.

Undue importance has been given to the fact that no written order was signed and filed by the court specifically directing the clerk to do his duty in the matter. I have never known an instance where the court has signed and filed an order directing the clerk to do his duty.

I think the statement in the majority opinion, "We assume that the clerk must have thought he was authorized to make the above *nunc pro tunc* entry," should have read, instead, "We assume that the clerk was authorized to make the *nunc pro tunc* entry."

When an unchallenged record comes to us showing a timely filing, the question of the correctness of the record on that point is not raised by the appeal. On the contrary, the appellant must and does rely upon the correctness of the record. Certainly, the respondent did not raise the question of the correctness of the record. In divorce actions, this court has only appellate jurisdiction. It is most logical and in accordance with all of our decisions that the superior court and the supreme court would not have simultaneous jurisdiction of identical subject matter in such actions.

This court has, on its own motion, departed from its appellate jurisdiction and invaded the jurisdiction of the superior court. It had no opportunity to pass upon the correctness of the record as a factual matter because the question was not raised on appeal. It does not question that the statement of facts was filed in open court, September 9, 1944, was later lost, and that the truth was made to appear by a *nunc pro tunc* entry. It simply holds that the superior court has no authority to make such an entry. It thereupon disregards the statement of facts, or, in other words, holds it to be a nullity. It appears that this is based on the theory that the superior court lost its jurisdiction by reason of there being a notice of appeal. The statute prescribes otherwise.

What is meant when one uses the word "jurisdiction" depends somewhat upon its context. Here it has to do with the situs of authority to make the record; not, of course an authority to act arbitrarily because of being beyond the reach of an appeal, but the authority to act and, in the absence of an appeal, to have its acts constitute the record.

The majority opinion, holding as it does that the superior court has no authority to make its records speak the truth, and this court clearly having no jurisdiction to do so, necessarily results in a fatal absence of jurisdiction anywhere to make a true record. In other words, this court has exercised a simultaneous jurisdiction that it does not have under the law to deprive the superior court of the jurisdiction that it did have, to the end that a vacuum is created in which no court has jurisdiction to act.

The appellant, through no fault of his own, has lost his appeal through the automatic affirmance of the trial court's decree without regard to the merits of his cause. This is not justified under the statute or the doctrine of *stare decisis,* and I cannot agree that the new rule herein laid down, which creates a fatal want of jurisdiction anywhere to make the record speak the truth, is in furtherance of a sound administration of justice.

BLAKE, J., concurs with MALLERY, J.

GRADY, J. (dissenting)—I am not in accord with the conclusion that the statement of facts should not be considered on this appeal. In order to perfect the appeal, it was necessary that the statement of facts be filed not later than September 21, 1944. The trial judge has certified that on September 9, 1944, the original statement of facts was settled by him and the certificate was signed after notice, and that since that time the original was lost or mislaid and could not be found. I think it must be presumed that, when the trial judge certified the statement of facts, it had then been filed with the clerk. That date was within the ninety-day period prescribed for filing a statement of facts. The certificate is not dated, but the absence of a date thereon does not affect it in any way. It is apparent from the various entries made and referred to in the majority opinion that, when it was discovered that the original statement was lost, appellant had another one prepared and sought to have the lost record restored pursuant to Rem. Rev. Stat., § 1270, [P.P.C. § 44-19], which reads as follows:

"Whenever a pleading, process, return, verdict, bill of exceptions, order, entry, stipulation, or other act, file, or proceeding in any action or proceeding pending in any court of this state shall have been lost or destroyed by fire or otherwise, or is withheld by any person, such court may, upon the application of any party to such action or proceeding, order a copy or substantial copy thereof to be substituted."

In order to accomplish the restoration of the lost record, appellant filed the statement of facts which he desired to be substituted for the lost one. Although the record may not show that a formal written application was made to restore the lost record, this was not necessary. Oral application was sufficient. All that was necessary was to apprise the court the record was lost and when this was made to appear it became the duty of the court to restore it.

The clerk, of course, had no authority when filing the statement to do anything other than indorse thereon the actual date of filing, which was October 24, 1944. We may disregard the further entry made by the clerk: "*nunc pro tunc* as of September 9, 1944," but if this entry is material

to our determination of a factual question of jurisdiction, which we have raised of our own motion, we must presume that the clerk was duly authorized to make the entry rather than to assume he did so without authority.

However, when the trial judge acted on the question of the restoration of the lost record on October 24, 1944, he certified the substitute as the statement of facts, and to make certain that he was restoring the lost record he did so as of September 9, 1944, the date on which he had certified the original statement of facts. I think the statute gave the trial court this authority. The trial judge did not purport to change the date of the filing of the original statement of facts. What he did was to restore a lost record, and the order and entries he made constitute evidence of that fact.

The record that was lost was a record of the superior court and had not yet been made a record of this court. Even though an appeal had been taken by giving notice of appeal and filing a cost bond, the trial court retained jurisdiction of the case for the purpose of settling and certifying the statement of facts (Rule 9; Rem. Rev. Stat., §§ 388, 389, 391 [P.P.C. §§ 47-15, 47-17, 47-21]), and if it got lost before it was transmitted from the superior court that court had the authority under the statute to restore it so that the whole record on appeal could be sent to this court. The case was still "pending" in the superior court until that court had done everything that was necessary in order that it could be considered on appeal, and it would have been an idle ceremony to have applied to this court before any record was sent up for an order of restoration and for this court to then refer the case back to the superior court to make the restoration.

We have held that, under the statute, the restoration of a lost record must be made by the trial court, although an appeal had been taken and the question of loss of record appears not to have been observed or claimed until the case had reached this court. *State v. Schuman,* 87 Wash. 590, 152 Pac. 3. In that case, it was claimed the instructions given by the court had been lost. In making up a transcript on appeal, the clerk included a set of instruc-

tions which were a part of his record, but it was claimed that they were not the instructions given by the court and submitted to the jury. A motion was made in this court to strike the instructions from the record. We denied the motion because the instructions included in the transcript were a part of the clerk's record, but we said:

"The denial of the motion, however, does not leave the prosecuting attorney without remedy. If, as is contended by him, these instructions, which purport upon their face to be the 'instructions of the court,' were not actually given, but are, as he contends, instructions requested by him, and were so endorsed upon the back thereof, a supplemental transcript of the whole document may be forwarded here which will show what this particular document in fact really is. Furthermore, if the instructions which were actually given by the court are not in the record, and have been lost or destroyed, as is claimed, it is plain that the court or judge who tried the case may, and it is his duty, to substitute a copy of the lost or destroyed record, under the provisions of Rem. & Bal. Code, § 1270 *et seq.* (P. C. 81 § 1147); and when so substituted, the respondent may then file the same in this court by supplemental record."

I believe there was a proper restoration of a lost statement of facts, and that the substituted statement took the place of the lost one, and has the same operative effect as the original and must be considered as the original, and be deemed to be timely filed.

I agree with the majority opinion that affidavits not included in a statement of facts cannot be considered by us. As to the affidavits which were treated by the court as pleadings I am of the opinion that material allegations of fact contained therein and not controverted should be taken as true, as provided by Rem. Rev. Stat., § 297 [P.P.C. § 86-27].

The substituted statement of facts should be considered by us, and the appeal determined on its merits.