[No. 30232. *En Banc.* July 15, 1947.]

WOODROW W. SEWELL, *Appellant*, v. VIRGINIA SEWELL, *Respondent.*[1]

[1]Reported in 184 P. (2d) 76.

*Griffin & Griffin,* for appellant.

*Don Cary Smith,* for respondent.

MALLERY, C. J.—On April 4, 1947, this court entered an order directed to the appellant herein to show cause why he should not be ordered forthwith to deliver the minor child of the parties to the respondent, to whom custody had been awarded in an interlocutory order from which appellant has appealed, or be held to be in contempt of court and have his appeal dismissed.

The appellant admitted that the interlocutory order granted custody of the child to the respondent. He showed cause on the merits as to why the custody of the child should not be disturbed during the pendency of the appeal. He did this upon the theory that such an interlocutory order can be superseded, and in addition contended that, even if it could not be superseded, nevertheless this court would exercise its discretion on the merits as to the question of custody pending appeal.

█ We do not agree with the contention that such an order can be superseded on appeal.

In *State ex rel. Davenport v. Poindexter,* 45 Wash. 37, 87 Pac. 1069, this court laid down the rule that an inter-

locutory order with respect to the custody of minor children could not be superseded upon appeal or the order changed by the trial court, pending an appeal. The court therein said:

"In such a proceeding as this, we do not think the giving of a supersedeas bond has any effect whatever upon the possession, custody and control of the minor children in question. It being presumed that the order of the trial judge was correct, and that he was actuated by a consideration for the minor's welfare, it would be against public policy to have that welfare imperiled during an appeal, in the absence of a statute clearly permitting the staying of such orders."

The respondent has the right to have the custody of the child as provided in the court's interlocutory order pending the appeal, and a defense on the merits will not lie to an appropriate procedure to enforce the order.

We issued the order to show cause herein in order to afford us an opportunity of indicating an appropriate procedure to be followed in such a situation.

■ After an appeal is taken, the trial court loses jurisdiction over the subject matter of the appeal and cannot change its judgment or orders entered prior thereto, or do anything that affects the subject matter of the appeal. See *Aetna Ins. Co. v. Thompson*, 34 Wash. 610, 76 Pac. 105; *Kawabe v. Continental Life Ins. Co.*, 97 Wash. 257, 166 Pac. 617; *Van Horne v. Van Horne*, 194 Wash. 606, 78 P. (2d) 1082.

■ It does not follow, however, that, because of that, we will either undertake the enforcement of the interlocutory order of the trial court pending the appeal or take jurisdiction to pass upon the merits as to the custody of children during the pendency of the appeal and issue and enforce our own orders pertinent thereto.

It is true the trial court has lost jurisdiction over the subject matter of the appeal and may not change any order theretofore entered that comes up to this court on the appeal. However, the provisional remedies are not suspended where an appealable order is not or cannot be

superseded. The process for enforcing the interlocutory order pending an appeal is in the nature of a provisional remedy and may issue as a matter of course. Since they do not inhere in the appeal or affect it, the trial court does not lose the jurisdiction incident to their issuance.

In *Pike v. Pike*, 24 Wn. (2d) 735, 167 P. (2d) 401, this court approved the procedure followed in *Helard v. Helard,* 22 Wn. (2d) 950, 155 P. (2d) 499. In the *Helard* case, the appellant surreptitiously took the children out of the state in defiance of the trial court's interlocutory order. ⸱ The respondent brought a contempt proceeding before the trial court, and asked for a writ of assistance, to the end that the sheriff might deliver the children to him. The appellant applied to this court (State ex rel. Helard v. Superior Court, Cause No. 29316), seeking a writ of prohibition, to prohibit the trial court from issuing such a writ of assistance upon the ground that the trial court had lost jurisdiction after appeal to issue such a writ. This court denied the application, whereupon the trial court issued the writ of assistance. Thereafter, the sheriff made a "not found" return, the children having been spirited away where they could not be found.

The respondent herein may seek a writ of assistance from the trial court or press contempt proceedings, or both, and the trial court has jurisdiction to entertain them. Because remedies are available to the respondent in the trial court, we deny her application for an order of this court directing the appellant to turn over the child to the respondent. Of course, in the absence of such an order, the appellant is not now in contempt of this court. The motion to dismiss the appellant's appeal because he is in contempt of court must therefore be denied.

This court has and will dismiss appeals in divorce actions where it is made to appear that the appellant will not abide the appeal and will make impossible the execution of the decree. Such dismissals have been preceded by orders of this court directing the appellant to produce the child or children by a day certain under pain of having

the appeal dismissed. See *Pike v. Pike, supra,* and *Helard v. Helard, supra.*

The instant case is not similar to the *Pike* case. The appellant is under the mistaken notion that the interlocutory order is superseded. However, he has given no indication that he will not abide the result of the appeal.

The show cause order is dismissed.

STEINERT, ROBINSON, JEFFERS, and ABEL, JJ., concur.

SIMPSON, J. (dissenting)—The opinion in this case announces a rule entirely at variance with all of our decisions relative to appellate procedure. In the first place, the majority opinion, as I understand it, means to hold that this court does not have jurisdiction relative to the custody of children pending an appeal in a divorce case. However, the opinion states:

"The respondent has the right to have the custody of the child as provided in the court's interlocutory order pending the appeal, and a defense on the merits will not lie to an appropriate procedure to enforce the order."

How can this court determine the question of custody, as it has, without first having secured jurisdiction? There are no cases in any of the law books in this, or any other state, which so hold.

The majority cite the case of *Helard v. Helard,* 22 Wn. (2d) 950, 155 P. (2d) 499, and make certain statements relative to that case which are not contained in the opinion. The case as reported, reads as follows:

"This matter having come on regularly to be heard before the court sitting *En Banc* on the 9th day of November, 1944, on the motion of respondent to dismiss the appeal herein taken by Margaret Helard, and the court having heard and considered the matter and having thereafter entered an order filed herein November 29, 1944 (which order is hereby referred to as pertaining to the substance of this order); and it further appearing that by the order above mentioned the appellant, Margaret Helard was ordered to return to the state of Washington and to the jurisdiction of the superior court for Kitsap county on or before the 3d day of January, 1945, the minor children of herself and respondent, Louie Helard, and that it was further pro-

vided by the order that, if the children of the parties to this action should not be so returned to the jurisdiction referred to on or before January 3, 1945, appellant's appeal to this court then here pending would be dismissed;

"And the above-entitled action having come on again regularly to be heard before this court sitting *En Banc* on the 4th day of January, 1945, and it then appearing that the minor children of the above-named parties to this action have not been returned to the jurisdiction of the superior court of the state of Washington for Kitsap county on or prior to January 3, 1945, or at all, and the matter having been on the 4th day of January, 1945, by this court taken under advisement;

"Now, THEREFORE, IT IS BY THE COURT ORDERED that the appeal of Margaret Helard in the above-entitled matter be and the same is hereby dismissed.

"Dated this 5th day of February, 1945."

The only reference to the *Helard* case in *Pike v. Pike,* 24 Wn. (2d) 735, 167 P. (2d) 401, is contained in the following quotation:

"However, we are not disposed to dismiss this appeal at the present time, but prefer to follow the usual practice in such cases, as indicated in *Helard v. Helard,* 22 Wn. (2d) 950, 155 P. (2d) 499, by making an order dismissing the appeal, to take effect on a certain day, unless in the meantime the appellant complies with the interlocutory order made by the trial court. In conformity with such practice, the appeal in this case will be dismissed within ten days after the effective date of filing this opinion, unless before that time appellant returns the children to their father in accordance with the interlocutory order."

Art. IV, § 4, of the constitution of the state of Washington confers appellate jurisdiction on the supreme court.

Rem. Rev. Stat., § 996 [P.P.C. § 23-41] (formerly Rem. & Bal. Code, § 996), provides:

"In all instances where the superior court shall grant a divorce, it shall be for cause distinctly stated in the complaint, and proved, and found by the court, and the court shall state the facts found upon which the decree is rendered; and when either party shall signify a desire to appeal from any of the orders of the court, in the disposition of the property or of the children, the court shall certify the evidence adduced on the trial, and the supreme court shall be

possessed of the whole case as fully as the superior court was, and may reverse, modify, or affirm said judgment, according to the real merits of the case."

This section of the code has been held to be a special statute applicable in divorce cases.

In *Holcomb v. Holcomb*, 49 Wash. 498, 95 Pac. 1091, this court had before it an application for temporary alimony, attorney's fees, and suit money, pending an appeal from a judgment of divorce. The application also contained a request for a writ *ne exeat*, restraining and prohibiting the defendant from leaving the state of Washington. In passing, the court referred to Bal. Code, §§ 5722, 5723, which, with some exceptions not necessary to be considered in this case, are the same as Rem. Rev. Stat., §§ 988, 989 [P.P.C. §§ 23-15, -23]. These sections of the code give to the superior court the power to make interlocutory orders concerning the disposition of the persons, property, and children of the parties; also, to make disposition of the property belonging to the litigants. In passing upon the sections of the statute to which I have just referred, this court stated:

"Under § 5723 it is conceded that the trial court has power in all proper cases to allow alimony, suit money, and attorney's fees pending the litigation in that court. That portion of § 5730 which says, 'and the supreme court shall be possessed of the whole case as fully as the superior court was,' would seem to imply that the appellate court should, upon the appeal, be vested with every power concerning the parties and the property which was possessed by the trial court during the pendency of the case in that court.

"But it is suggested that, under the state constitution, such power is not vested in this court. Where the parties by their pleadings bring before the trial court their property, that court is by § 5722 given express authority to dispose of it during the pendency of the action 'as may be deemed right and proper.' Hence, during that time, the property is practically *in custodia legis*. Section 5723 requires the court, upon granting a divorce, to dispose of the property 'as shall appear just and equitable.' If an appeal is taken and the decree superseded, where is the control of the property then vested? It could not go absolutely to the

appellant, but would be there subject to just such limitations as existed immediately before the decree was entered. That would be the natural effect of the stay bond. It would seem that the power over the property, given by § 5722, would then pass to the appellate court, and should be exercised by that court as an incident to its appellate jurisdiction, essential to the administration of justice in such cases, although possibly it might also be exercised by the trial court in providing for the maintenance of the wife and for the preparation and presentation of her case on appeal; a question, however, that we do not now decide. We think it may be deemed such an incident to the exercise of the appellate and revisory jurisdiction of this court in a case like this at bar, for two reasons: (1) because the state is an interested party in every divorce case, and public policy forbids that the issues in such a case should be adjudicated when the wife, by reason of the withholding of her property by the husband, is unable to appear or be heard concerning the rights of herself and minor children; (2) because she, being a joint owner in the property which by §§ 5722 and 5723 is made subject to the control *pendente lite* and to the disposition finally of the court, is entitled, both as a matter of right and public policy, to such an allowance from the property as will sustain her during the litigation and enable her to be heard before both the trial and appellate courts as to her claims and rights involved in the litigation.

"A divorce case is tried in this court *de novo* upon the record and evidence brought from the trial court. *In the consideration and determination of the case, we must consider not only the interests of the husband and wife, but also the interests of the state and society generally and of the minor children of the parties.* [Italics mine.] The peculiar character of a divorce proceeding is such that both justice and public policy demand an opportunity for the wife to be present or heard before her property and other rights are passed upon by the appellate court. The law cannot consistently say to her: 'You must support yourself during this litigation and defend the interest of yourself, children, and the state, appear on this appeal and pay all expenses for preparing and presenting your case,' and then add: 'But you will not be allowed any of your money or other property, tied up herein, with which to meet such demands, even though your inability to appear results disastrously to the interests of yourself, your infant child,

and the state.' We do not think our constitution and statutes demand a construction producing such an incongruity. To say that the law requires the wife to do something which the law makes it impossible for her to do, is to assert a proposition to which we cannot accord legal sanction. We think this court has the power to exercise its jurisdiction so as not to give recognition to such a doctrine. Where, as in this case, there is a considerable amount of community property involved, all of which is tied up by a stay bond on appeal, we think this court has the power, incidental to its appellate jurisdiction, to award from such property a sufficient amount to support the wife and minor child and to properly present her case herein. We think such power is contemplated in § 4 of art. 4, of the State Constitution, where it says: 'The supreme court shall also have the power to issue . . . all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction.' "

In *State ex rel. Gibson v. Superior Court,* 69 Wash. 280, 124 Pac. 686, this court held, upon appeal from judgment of divorce disposing of the property rights of the parties, that the superior court lost all jurisdiction, and could not issue a writ of garnishment to enforce the judgment for costs and attorney's fees against the husband, although he failed to file any supersedeas bond on his appeal. In passing, the court stated:

"It is thus apparent that, before the garnishment proceedings were instituted, the principal action and every part thereof had been appealed to this court. The relator contends that this transferred the entire action to this court, and deprived the lower court of jurisdiction thereof for any purpose, and that the garnishment proceeding, being in its nature ancillary to the principal action, the trial court had no jurisdiction to entertain it. This contention must be sustained. The statute (Rem. & Bal. Code, § 988), confers upon the trial court or judge thereof in divorce proceedings power pending the action to make and enforce 'such orders for the disposition of the persons, property and children of the parties as may be deemed right and proper.' The statute further provides (Rem. & Bal. Code, § 989), that, 'in granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable,' etc."

Then, after quoting Rem. & Bal. Code, § 996, the court said:

"We can conceive of no plainer terms to express the intention that upon the appeal the supreme court acquires jurisdiction of the whole case and for every purpose. *Holcomb v. Holcomb;* 49 Wash. 498, 95 Pac. 1091. It follows that the trial court by the appeal loses jurisdiction for any purpose.

" 'Garnishment proceedings, being purely ancillary to the suit against the principal defendant, depend upon it for their existence and validity. If, for any reason, the court fails to get jurisdiction of the principal suit, the garnishment must inevitably fall with it. This principle is universal.' Rood, Garnishment, § 224.

"The garnishment proceeding being ancillary to the principal action, of which the trial court had lost jurisdiction by the appeal, it follows that the trial court had no jurisdiction to entertain it. The garnishment proceedings were, therefore, void from the beginning.

"It is argued that, inasmuch as Stephen A. Gibson failed to file his supersedeas bond on his cross-appeal in the consolidated actions until after the sale in the garnishment proceeding, the lower court still had jurisdiction to enforce the judgment for costs and attorney's fees. But it will be noted that § 996 above quoted does not make the transfer of the case appealed, or any part thereof, dependent upon the filing of a supersedeas bond. It expressly declares that, upon the appeal, 'the supreme court shall be possessed of the whole case as fully as the superior court was.' "

In speaking of Rem. & Bal. Code, § 996, Judge Main, in the case of *Masterson v. Ogden,* 78 Wash. 644, 139 Pac. 654, Ann. Cas. 1914D, 885, stated:

"The appellants' brief discloses a painstaking investigation into the respective effects of appeals and writs of error at common law. It is unnecessary to follow this discussion, for the reason that appellate procedure in this state is defined by the statutes. Neither does the general statute governing appeals aid in determining the question, for there is a special statute made applicable to appeals in divorce cases. Rem. & Bal. Code, § 996 (P. C. 155 § 23), which governs appeals in divorce cases, provides, among other things, that when an appeal is taken, 'the supreme court shall be possessed of the whole case as fully as the

superior court was, and may reverse, modify, or affirm said judgment, according to the real merits of the case.' "

From a study of the statutes and the cases to which I have just referred, it seems crystal clear that this court assumes entire jurisdiction after an appeal has been perfected in a divorce action. The wording of the statute is plain. There is no room for construction. It simply says that the supreme court shall be as fully possessed of the case as the superior court was. The three cases just cited bear out the conclusion I have reached.

I shall now call attention to other cases decided by this court which laid down the rule that the superior court loses all jurisdiction in a divorce proceeding, or any other kind of case, as soon as notice of appeal has been given.

In *State ex rel. Mullen v. Superior Court,* 15 Wash. 376, 46 Pac. 402, an individual obtained a judgment in his favor in a *quo warranto* proceeding to test the title to an office. The defendant appealed, and then sought an order in the superior court requiring the relator to surrender possession of the office. A proceeding was then instituted in the supreme court to prohibit the superior court from proceeding. It was held that, when the appeal was perfected, the superior court had no jurisdiction to take any action in the proceeding except those specially provided for in the act relating to appeals.

In *Irving v. Irving,* 26 Wash. 122, 66 Pac. 123, disposition was made of a child in a divorce action. Thereafter, one of the parties to the action petitioned the superior court to change the custody of the child. The trial court granted the petition, and an appeal was taken from that order. In passing upon the question, this court stated:

"The statute also provides (§ 6515, Bal. Code) that upon the taking of an appeal by notice, and the filing of a bond to render the appeal effectual, the supreme court acquires jurisdiction for all necessary purposes, and has control of the superior court and all inferior officers in all matters pertaining thereto. The subject-matter of controversy in both these petitions was the right to the custody of the minor child. When, therefore, the final judgment was

entered in the superior court, and an appeal therefrom was taken to this court, jurisdiction over the subject-matter of the controversy was taken from the superior court and vested here, and this court alone had power, during the pendency of such appeal, to make orders with relation thereto."

The case of *Aetna Ins. Co. v. Thompson,* 34 Wash. 610, 76 Pac. 105, has to do with the jurisdiction of the supreme court after an appeal has been taken. In that case, it was held that, after an appeal was perfected, the jurisdiction of the trial court was at an end, and it had no power to interfere with the jurisdiction of the supreme court, or with the judgment of its own court.

A portion of the holding in the case last cited was criticized in *Stone-Easter v. Seattle,* 121 Wash. 520, 209 Pac. 687, 215 Pac. 56. However, the criticism was not directed to the portion of the case just referred to.

*State ex rel. Davenport v. Poindexter,* 45 Wash. 37, 87 Pac. 1069, is another case which has to do with jurisdiction after an appeal has been taken. The case resulted from an application for writ of *habeas corpus.* The facts were that relators were awarded the custody of children by virtue of adoption proceedings which were claimed to have been fraudulent and invalid. The mother of the children had instituted a *habeas corpus* proceeding in the superior court to recover possession of her children. During the hearing, the trial court directed that the minors should remain in the custody of the matron of the juvenile department of the court, and were in such custody at the time the court rendered its judgment giving the children to their mother. Appeal was then taken to this court and a supersedeas bond filed. Thereafter, the relators made a motion for the delivery of the children to them upon the ground that they had filed a supersedeas bond in the amount fixed by the court. The motion was denied by the trial court. In passing, we held as follows:

"In such a proceeding as this, we do not think the giving of a supersedeas bond has any effect whatever upon the possession, custody and control of the minor children in

question. It being presumed that the order of the trial judge was correct, and that he was actuated by a consideration for the minors' welfare, it would be against public policy to have that welfare imperiled during an appeal, in the absence of a statute clearly permitting the staying of such orders. The trial court had jurisdiction to take said children into its possession, if it believed that their physical or moral welfare or other substantial interests necessitated such action. When the appeal was perfected, this court became invested with jurisdiction to make such orders as the welfare and necessities of said minors might demand. If, as contended by relator, the present situation of these minors is so unsuitable as to menace their physical or moral welfare or other substantial interests, the question of an appropriate change could doubtless be considered by this court upon a proper showing."

In *Gust v. Gust,* 71 Wash. 75, 127 Pac. 566, it was held that, when an appeal was taken in a divorce action, the whole cause was brought to the supreme court, and that the superior court had jurisdiction only to perfect the appeal. In passing, it was stated:

"In virtue of the statute, actions for divorce, whether granted or denied in the court below, are tried *de novo* in this court on appeal of the unsuccessful party. An appeal, therefore, duly perfected, brings the whole case to this court for review, and deprives the trial court of jurisdiction to take any further action in the proceeding, except such as may be specially provided for in the act relating to appeals. Rem. & Bal. Code, § 1731. The modification of the judgment here complained of was not such an action as the statute authorizes. It virtually changed the rights of the parties to the judgment, and was, in effect, the entry of a new judgment, while the statute authorizes only such further action on the part of the trial court after an appeal has been taken as may be necessary to perfect the record in this court."

*State ex rel. Wilkerson v. Superior Court,* 108 Wash. 15, 183 Pac. 63, is another case which has to do with jurisdiction of this court in divorce appeals. It appeared in that case that a divorce decree was entered, awarding custody of the minor daughter to her mother, and the custody of two minor boys to their father. Later, the mother filed a petition

asking to have the decree modified so as to award her the custody of all three children, who were then in her care and control. Upon a hearing, the decree was modified so as to award to the mother the custody of the oldest boy and the girl, and to award to the husband the custody of the other boy. She then appealed. Thereafter, the father sued out a writ of *habeas corpus* for the purpose of securing possession of the boy whose custody had been awarded to him by the original decree and denied to him in the last action. Upon the return of the writ, the mother filed a plea in abatement upon the ground that the appeal had been perfected in the divorce action. The plea was denied by the trial court, and thereupon application was made to prohibit the court from entering an order in the *habeas corpus* proceeding, transferring possession of the boy to his father. In passing upon this question, the court stated:

"This court has early decided, and consistently followed that decision, that, upon an appeal being taken from an order modifying a divorce decree, the fact of such appeal may be set up by plea in abatement in defense to a subsequent action by either of the parties seeking to have the custody of the children changed during the pendency of such appeal; that the supreme court, after the appeal has been taken, possesses the sole power to make orders with reference to the custody of the children, and that all applications for such change must be addressed to this court. *Irving v. Irving*, 26 Wash. 122, 66 Pac. 123; *Gust v. Gust*, 71 Wash. 75, 127 Pac. 566."

In *Phillips v. Wenatchee Valley Fruit Exchange*, 124 Wash. 425, 214 Pac. 837, this court laid down the rule that, after an appeal has been taken in an equitable case, the trial court is without jurisdiction to make a supplemental order or decree.

In *Isom v. Olympia Oil & Wood Products Co.*, 200 Wash. 642, 94 P. (2d) 482, it was held that the trial court had no power to change the date of the filing of the notice of appeal, or the bond given on appeal.

In *State ex rel. Department of Public Service v. Wilson*, 12 Wn. (2d) 614, 123 P. (2d) 341, it was held that, after an appeal had been perfected, the superior court had no juris-

diction to take any action in the proceedings except those necessary, or specifically provided by statute, for making the appeal effective.

In *Penchos v. Ranta,* 22 Wn. (2d) 198, 155 P. (2d) 277, we held that, after an appeal had been perfected, the trial court was without jurisdiction to change the record by a *nunc pro tunc* order altering certain dates in the findings of fact as already made by the trial court. This holding was based on the *Kawabe, Isom,* and *Wilson* cases.

In *Nash v. Nash,* 23 Wn. (2d) 448, 161 P. (2d) 326, it was held that, after an appeal had been perfected, the trial court was without authority to change the actual filing date of the statement of facts by a *nunc pro tunc* order.

In *Pike v. Pike,* 24 Wn. (2d) 735, 167 P. (2d) 401, this court considered a case where a motion had been made to dismiss an appeal by reason of the fact that one of the parties had removed the children, who had been awarded to the other parent, and concealed them so that the order of the trial court was prevented from becoming effective. Among other things, the appellant contended that the supreme court had only appellate jurisdiction, and could not pass upon motions relative to the enforcement of the judgment rendered in the superior court. In passing upon this question, we held that, after appeal had been perfected, the trial court lost all jurisdiction of the matters concerned in the case except those provided for in the law relating to appeals, and cited many of the cases to which I have referred. The court then stated:

"It is our conclusion that the superior court lost jurisdiction in this case at the time appeal was perfected, and that the power to determine any matters connected with the case was immediately transferred to this court."

The decision of the majority in this case will result in a state of utter confusion regarding the jurisdiction of courts when appeal has been taken. As I understand the majority opinion, this court is without jurisdiction to enforce the judgment after appeal has been taken, but that the superior court retains jurisdiction to enforce its decree, subsequent

to the taking of an appeal. On the other hand, the majority opinion concludes that the trial court cannot change or modify its judgment subsequent to the taking of an appeal.

The unanswered question is: Does the supreme court have the jurisdiction to change or modify temporary judgments of the trial court during the time an appeal is being considered?

The rule laid down by the majority opinion will result in the denial of the right of review to many people. Let us assume (and the assumption is reasonable because the same situation has been present in the past, and undoubtedly will be in the future) that "A" secures a decree of divorce from "B," and the custody of the minor children, with permission to take them out of the state of Washington, beyond the jurisdiction of the courts of this state. Under the situation just spoken of, "B" will have no recourse whatever if "A" desires to take the children out of the state before the case is decided in this court. The trial court cannot change or modify its decree, and this court will be unable, because of lack of jurisdiction, to modify the decree of the trial court so as to keep the children within the jurisdiction of the courts of this state, pending appeal.

An appeal is a right guaranteed by the constitution, and should not be taken away from those who desire to take advantage of the right. I realize, of course, that the right to appeal remains, but it would be of no effect, because even if the judgment should be reversed, it would be ineffectual.

We should hold, in line with our various decisions, and in conformity with the provisions of the statute, that, when an appeal is taken in a divorce case, this court assumes jurisdiction for every purpose.

HILL, J. (dissenting)—I find myself unable to agree with the conclusion of the majority, and uncertain whether I can go as far as Judge Simpson goes in the broad grounds of his dissent. He discusses cases dealing generally with the jurisdiction of the supreme court after an appeal has been perfected. I prefer not to deal with that general question, but to confine my research and conclusions on this

occasion to the narrow question presented as to the rights and remedies of parties affected by an order of the superior court relative to the custody of children after an appeal has been perfected therefrom.

It will be agreed that, for the reasons stated in *State ex rel. Davenport v. Poindexter*, 45 Wash. 37, 87 Pac. 1069, and quoted in the majority opinion, an order with respect to the custody of minor children cannot be superseded. The same reasoning, however, would seem to require that the trial judge's order with reference to custody be carried out pending the appeal, in the absence of a showing that there has been a change of condition since the entry of the interlocutory order.

The problem then confronting us is: How are the orders of the trial judge relative to custody to be enforced pending appeal?

We will discuss the cases chronologically.

The first case dealing with this problem was *Irving v. Irving*, 26 Wash. 122, 66 Pac. 123. A divorce decree entered therein on December 17, 1898, awarded the custody of the sixteen-month-old child of the parties to Mr. Irving. On January 10, 1900, an order was entered modifying the decree and awarding the custody of the child to the foster mother of Mrs. Irving. By January 20th, Mr. Irving had perfected his appeal to the supreme court from this modification of the custody decree.

On March 12, 1900, Mr. Irving filed a petition in the superior court alleging that the foster mother of Mrs. Irving was an unfit person to have the child, and alleging his own fitness and ability to care for the child. To this petition, Mrs. Irving and her foster mother filed a plea in abatement, setting out that there was an appeal pending from the order of January 10th, and that the questions presented and involved upon the appeal were the same questions presented by the petition then before the court. Mr. Irving demurred to the plea in abatement. The demurrer was sustained, and the superior court then heard the matter upon its merits and awarded the custody of the child to Mr. Irving. From this order Mrs. Irving and her foster mother appealed.

This court held that the plea in abatement was good and that the superior court had no jurisdiction to enter the order last referred to, awarding the custody of the child to Mr. Irving. From this case comes the rule, which has been adhered to by this court from September 13, 1901, to the present date, that:

"After an appeal, and while the case is pending in the appellate court, that court possesses the sole power to make orders with reference to the custody and disposition of the child during the pendency of the appeal, and, when changed conditions require a change in the order for such custody, the application therefor should be addressed to that court." *Irving v. Irving, supra.*

The *Irving* case has never been overruled; it is clearly decisive of the fact that respondent in the present case is in the proper forum with her request for the custody of her child. The majority opinion does not attempt to distinguish it, and, in fact, does not refer to it.

The rule of the *Irving* case is recognized as being the law of this jurisdiction in *State ex rel. Davenport v. Poindexter,* 45 Wash. 37, 87 Pac. 1069, which is authority only for the proposition that an order with respect to the custody of minor children cannot be superseded.

It is to be noted that the *Davenport* case was not a custody proceeding arising out of a divorce action. The superior court of Spokane county had entered a judgment and decree setting aside certain adoption proceedings and awarding the custody and control of two minor children to their natural mother. During the hearing, the superior court had directed that the children be placed in the custody of the matron of the juvenile department of that court. To forestall delivery of the children to their mother, the adoptive parents immediately perfected an appeal and gave a supersedeas bond, and then moved the superior court for redelivery of the children to them on the ground that they had filed a supersedeas bond. The motion was denied. The adoptive parents then sought a writ of *habeas corpus* from this court, making the same contention. The writ was de-

nied for the reason heretofore indicated, but obiter the court said:

"When the appeal was perfected, this court became invested with jurisdiction to make such orders as the welfare and necessities of said minors might demand. If, as contended by relator, the present situation of these minors is so unsuitable as to menace their physical or moral welfare or other substantial interests, the question of an appropriate change could doubtless be considered by this court upon a proper showing. *Irving v. Irving*, 26 Wash. 122, 66 Pac. 123. But such a matter is not before us at this time."

The only case which even questions the wisdom or propriety of the rule in the *Irving* case is *State ex rel. Clark v. Superior Court*, 90 Wash. 80, 155 Pac. 398. In the *Clark* case, the child of the parties to a divorce action was in the possession of a sister of the father. The superior court ordered that the parents of the mother be given possession of the child for six months, beginning January 15, 1916, and that, at the end of six months, it be delivered to the sister of the father for six months, and the custody was to alternate each six months. The father appealed and gave a supersedeas bond. On January 15, 1916, the sister of the father refused to surrender possession of the child to the parents of the mother. The mother then made *application for an order directing the father to comply with that part of the decree which directed that the child should be placed in the custody of her parents.* The trial judge took the position that he had no jurisdiction to hear, consider, or determine such a motion. The mother then applied to this court for a writ of mandamus to compel the trial court to execute its decree. This court, speaking somewhat discursively, said:

"In the case at bar, an appeal is pending. The child is in the possession of the sister of defendant, who has been found to be worthy. Whether the respondent had jurisdiction to execute his decree by ordering the child turned over to the parents of the relator is of little consequence; for granting, as the relator admits, that the jurisdiction to make any order for the protection and welfare of the child is in this court, and having jurisdiction in virtue of the peti-

tion of the relator, we shall, in the exercise of that jurisdiction, treat the refusal of the respondent as a finding that the welfare of the child will not be jeopardized by allowing it to remain where it is pending the appeal. The custody of the child being given to the parents of relator, and to the sister of defendant for equal and alternating periods, neither party can claim that the particular time in which they shall have such custody is of legal consequence. It does not go to the welfare of the child, and that is the only thing this court or the superior court will inquire into.

"This holding makes it unnecessary for us to inquire whether the judgment of the court was self-executing in so far as it relates to the child, but it may be understood that that question is not foreclosed by our holding; for it may be that an appellant in a divorce proceeding might supersede the judgment, subject, however, to any further order that might be made by the trial judge pending a final hearing, for this is not a court of first instance. This court tries a case upon the record taken in the court below. In all actions arising under the marriage and divorce statutes, there is much room to argue that the immediate welfare and comfort of children, as well as the protection and conservation of the property, is still within the keeping of the superior judge. He is in position to call witnesses, to hear testimony, and make orders; his discretion and judgment being, of course, subject to review by the appellate court.

"For the first reason assigned, therefore, we hold—the character and capacity of the sister of the defendant being in no way challenged—that the welfare of the child does not demand any change in its place of keeping, pending appeal, and the application for the writ is denied."

I gather from the opinion that: (a) The superior court is probably in a better position to determine these matters than is the supreme court; (b) but, since it is conceded by the parties that the jurisdiction to make any order for the protection and welfare of the child is in the supreme court, (c) we will refuse to act unless it can be shown that the welfare of the child demands it.

In *State ex rel. Wilkerson v. Superior Court,* 108 Wash. 15, 183 Pac. 63, a divorce decree dated April 12, 1915, awarded the custody of a girl to the mother, and two boys to the father. On June 13, 1919, the decree was modified by giving to the mother the custody of the girl and one of

the boys, and to the father the other boy. The mother, at the time of filing the petition for modification, had all the children in her actual care and custody.

The mother appealed. The father sued out a writ of *habeas corpus* to secure the custody of the boy *awarded to him by the original decree and reawarded to him by the modified decree.* Upon the return of the writ, the mother filed a plea in abatement, upon the ground that an appeal had been perfected from the custody order. This plea was denied by the trial court, and then a writ of prohibition was requested to prohibit the trial judge from entering an order in the *habeas corpus* proceeding transferring the possession of the boy to his father. We granted the writ of prohibition, treating the application for the writ as an original application in this court relating to the custody of the child, and holding that, since the record disclosed no condition inimical to the welfare of the children, "all parties interested should remain in the position in which they were when the appeal was taken."

The court here removed any uncertainty which the *Clark* case may have left, saying:

"*The law is, as we understand it, that, pending an appeal in such cases, the lower court has not jurisdiction to modify or alter the decree as it may relate to the custody of children, but that such application must be made to the supreme court,* and that the giving of a supersedeas bond does not suspend the operation of the decree in actions of this character, as it relates to the custody of the child. The *Clark* case, above, having been an application for a writ of mandamus to compel the trial court to enforce its decree, and this court having treated the application as an original application in this court relating to the custody of the child, we may here treat this application for a writ of prohibition in the same manner and, as in the *Clark* case, determine from the record that there is no serious question concerning the worthiness of the mother or father, the trial court having seen fit to award children to each of them, and, pending the hearing, allowed the relator to have all the children in her care and keeping. In the *Clark* case, the relator was attempting to enforce the decree by applying for an order compelling its observance, while in this case the same result is sought to be obtained by means of a

writ of habeas corpus while the appeal is pending. *In neither case could the trial court take any further steps in regard to the custody or control of the child, no matter what the form of the proceeding in which such steps were sought to be taken. . . . The trial court, not having power to change the decree during the appeal, the application for the writ should have been presented to this court. This court has exclusive jurisdiction and was the forum in which any proceeding should be instituted which affected the question we are here discussing.* Considering this as an application here, what we have said in regard to the fitness of the parties would be determinative of the matter, and the record disclosing no condition inimicable to the welfare of the children, all parties interested should remain in the position in which they were when the appeal was taken." (Italics ours.) *State ex rel. Wilkerson v. Superior Court, supra.*

While the court continually refers to *change of custody,* it is clear that the question before it in both the *Clark* and *Wilkerson* cases was the enforcement of decrees already entered, and that reference is made in each case to a change of physical rather than legal custody. Here again we hold, in effect, that the trial court cannot enforce its custody decree pending an appeal, and the supreme court will not do so in the absence of a showing that the well-being of the child demands it.

The majority opinion relies on the case of *Helard v. Helard,* 22 Wn. (2d) 950, 155 P. (2d) 499, as authority for the proposition that the respondent here may secure a writ of assistance from the trial court. I will not quote from it, because it is set out in full in Judge Simpson's dissent. As it appears in the reports, it is authority for nothing except that we will use the procedural step of dismissing an appeal if *an order issued by this court* directing appellant to return children to the jurisdiction of the court from which the appeal is taken, is not complied with.

There is nothing in the case, as reported, that departs from our previous holdings that this court has exclusive jurisdiction in matters affecting the welfare of children after an appeal is taken. We did, for the first time, take affirmative action to change the *status quo,* but on the show-

ing that the mother had taken the children out of the state surreptitiously and in defiance of the trial court's interlocutory order. The expression "surreptitiously and in defiance of the trial court's order," I take from the majority opinion in the present case.

We acted, I take it, because we thought that the best interests of the children required it, not merely because a party was acting in defiance of an interlocutory order. In both the *Clark* and the *Wilkerson* cases, mothers were refusing to comply with the terms of interlocutory orders relative to the custody of children. It is true that the record does not stamp their action as "defiant," but it seems to me that, whether done courteously, graciously, firmly, or defiantly, the refusal to comply with an order of the court directing the transfer of custody of children is in fact a defiance of that order.

We said in the *Irving, Davenport, Clark,* and *Wilkerson* cases that we had exclusive jurisdiction in matters pertaining to the welfare of children after an appeal had been perfected. We said in the *Clark* and *Wilkerson* cases that we would not enforce a custody decree in the absence of a showing that the welfare of the children demanded it. The only step forward in the *Helard* case was that we showed that we would take affirmative action if the welfare of the children demanded it.

The majority relies on facts and procedure in the *Helard* case dehors our printed reports. I assume, because it is not so stated, that the interlocutory decree in the *Helard* case gave the children to the father. He asked the trial court for a writ of assistance to gain possession of the children. The appellant sought a writ of prohibition to prevent the trial court from issuing a writ of assistance; we refused the writ of prohibition; and the writ of assistance was issued by the trial court. It was, however, ineffective because the children had been removed from the state. We then made the order referred to in the *Helard* case as reported, directing that the children be returned to the jurisdiction of the trial court on penalty of a dismissal of the appeal.

It is conceded that, when we denied the writ of prohibition, we established a *factual* but not a *legal* precedent for the procedure suggested by the majority in the case now before us. We thereby recognized a jurisdiction in the trial court to enforce its interlocutory decree with reference to the custody of children after an appeal had been perfected. In doing so, we departed from the principle that this court has exclusive jurisdiction in such cases and, in effect, overruled the four cases I have referred to, not only without mentioning them, but without even an opinion.

We have heard much about overruling cases *sub silentio*. I would say that our unreported action in the *Helard* case, now the basis for the majority opinion, is an overruling *sub-sub silentio*. The action of the majority in this case raises it only to the dignity of being *sub silentio*.

There remains for consideration only the very recent case of *Pike v. Pike*, 24 Wn. (2d) 735, 167 P. (2d) 401. It is entirely consistent with and reaffirms our reported cases to the effect that the supreme court has exclusive jurisdiction over the matter of custody of children after an appeal is perfected.

In the *Pike* case, the trial court awarded the custody of both children, nine and seven years of age, to the father. The mother perfected an appeal to this court, and refused to surrender the children and concealed their whereabouts. The father, following the procedure suggested by the reported *Helard* case, sought an order from this court dismissing the appeal. We issued an order directing the mother to show cause why she should not deliver the children to the father and, in the event the children were not returned as directed, to show cause why her appeal should not be dismissed.

The appellant mother made a showing, by affidavit, that the children were well cared for, in a good environment, and receiving proper instruction and school training, but she refused to disclose the present abode of herself and the children. She further alleged that the father was a dan-

gerous person to have the custody of the children, and that he had told her that he would remove them from the state of Washington.

Deeming her showing insufficient, we entered an order directing that, unless she complied with the interlocutory decree within ten days, her appeal would be dismissed. On her failure to deliver the children to the father as directed, the appeal was dismissed. In the course of the opinion, we pointed out specifically the question involved:

"The next question for consideration is whether this or the superior court has jurisdiction to determine the question presented."

We quoted the *Irving* and *Davenport* cases at length, and also cited the *Clark* and *Wilkerson* cases, and stated as our conclusion that, at the time the appeal was perfected, the trial court lost jurisdiction to make any disposition of the matter presented.

The six cases here discussed and analyzed are all that deal with this specific question, and, as reported, there is no conflict on the question of the exclusive jurisdiction of this court. The majority opinion in the present case overrules them all. When the majority says,

"In *Pike v. Pike*, 24 Wn. (2d) 735, 167 P. (2d) 401, this court approved the procedure followed in *Helard v. Helard*, 22 Wn. (2d) 950, 155 P. (2d) 499,"

it seems to me that it goes too far. We did approve the procedure, as "reported," of dismissing the appeal when the trial court's custody decree was not complied with and our order seeking to enforce it was ignored, but it cannot be said or implied that in the *Pike* case we approved the unreported action in the *Helard* case of permitting the trial court to proceed to enforce its custody decree by a writ of assistance while an appeal was pending. The *Pike* case not only does not approve that procedure, but its philosophy, its rationale, and its express terms are irreconcilably opposed to it.

To summarize our holdings relative to what will and can

be done relative to custody decrees after an appeal has been perfected:

1. The *Irving* case holds that the trial court has no jurisdiction to change the custody of children;

2. The *Davenport* case holds that a custody decree cannot be superseded;

3. The *Clark* case holds that, assuming that the supreme court has exclusive jurisdiction *to enforce the terms of a custody decree,* it will not do so in the absence of a showing that the *status quo* is inimical to the well-being of the children involved;

4. The *Wilkerson* case holds flatly that the trial court *cannot enforce the terms of its custody decree,* and that the supreme court will not do so in the absence of a showing that the *status quo* is inimical to the well-being of the children involved;

5. The *Helard* case, as reported, holds that the supreme court will punish the refusal to obey its order requiring children to be returned to the jurisdiction of the court, by the dismissal of an appeal;

6. The *Pike* case holds that the trial court cannot enforce the terms of its custody decree, but that the supreme court can and, if the circumstances justify it, will insist that a custody decree be complied with by an appellant, or the appeal will be dismissed.

In the *Clark* and *Wilkerson* cases, this court refused to enforce the trial courts' custody decrees pending the appeals, deciding, on the basis of the showings made, that there was nothing inimical to the well-being of the child or children involved in the *status quo.* As stated at the beginning of this dissent, such holdings are not consistent with the reasons given for the refusal to supersede the custody decree in the *Davenport* case:

"Where minor children are involved a much different consideration is presented than obtains with reference to mere property rights. The welfare of the children is a matter of prime importance and public concern, and must be the subject of careful consideration at all stages of any proceeding wherein their possession, custody or control is

involved. In such a proceeding as this, we do not think the giving of a supersedeas bond has any effect whatever upon the possession, custody and control of the minor children in question. *It being presumed that the order of the trial judge was correct, and that he was actuated by a consideration for the minors' welfare, it would be against public policy to have that welfare imperiled during an appeal,* in the absence of a statute clearly permitting the staying of such orders." (Italics ours.) *State ex rel. Davenport v. Poindexter,* 45 Wash. 37, 87 Pac. 1069.

It is my belief that we should not depart from the trail that we have blazed in this type of case. (If the position taken by Judge Simpson in his dissent be sound, we have no right to make any such departure, even if we want to.) It seems to me that, instead of abandoning that trail, we should extend it further by saying in this case that we will always enforce, by appropriate remedies, a trial court's custody decree pending the determination of an appeal therefrom, in the absence of a strong showing that such enforcement will be inimical to the best interests of the child or children involved. Such a showing has not been made in this case, and we should proceed as we did in the *Pike* case.

MILLARD, J. (concurring with HILL, J.)—I concur in the view that *Pike v. Pike,* 24 Wn. (2d) 735, 167 P. (2d) 401, is controlling and should be followed or expressly overruled; therefore, I concur in opinion of HILL, J.